**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY ROSE KORENY,** | ) | Civil Action 17-371 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **RICHARD SMITH, MALLOREY** | ) | |
| **MORRISSEY, FARRELL WAGNER,** | ) | |
| *in his individual and official capacity,* | ) | |
| **CHRISTIAN HEYNES**, *in his individual* | ) | |
| *and official capacity,* and **THE** | ) | |
| **BOROUGH OF BRENTWOOD,** | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**CONTI, Chief District Judge**

### I.    Procedural History and Nature of Action

Presently pending before the court are: 1) the motion to dismiss filed by defendants Farrell Wagner ("Wagner"), Christian Heynes ("Heynes") and the Borough of Brentwood ("Brentwood") (collectively "Brentwood defendants") (ECF No. 13), and 2) the motion for leave to file Amended Complaint filed by plaintiff Mary Rose Koreny ("plaintiff" or "Koreny") (ECF No. 37). This matter stems from a motor vehicle accident on December 15, 2015, between a vehicle driven by Koreny and a vehicle driven by defendant Richard Smith ("Smith"). The accident occurred during the police vehicular pursuit of Smith by Wagner, an officer of the Brentwood Borough Police Department. Heynes, also an officer of the Brentwood Borough Police Department, was the officer in charge during the incident.

On March 23, 2017, Koreny filed a 214-paragraph complaint, (ECF No. 1), commencing this federal civil rights action pursuant to 42 U.S.C. § 1983 for violation of her substantive due process rights against Wagner and Heynes in their individual and official capacities under Count I and against Brentwood under Count II for failure to train. Koreny also sues the Brentwood defendants for state law negligence under Count III, and brings only state law negligence claims against defendants Smith and Mallory Morrissey ("Morrissey"), both Pennsylvania residents, Id. ¶¶ 24, 25, respectively under Counts IV and V (negligent entrustment).

On June 15, 2017, the Brentwood defendants responded to the complaint by filing their motion to dismiss (ECF No. 13), with brief in support (ECF No. 14). Instead of responding to the motion to dismiss by amending the complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B), Koreny filed a response and brief in opposition. (ECF Nos. 15, 16). On August 30, 2017, Smith responded to the complaint by filing an answer and cross-claim against the Brentwood defendants, asserting that if Smith is liable to Koreny for negligence, they are liable over to him for "contribution, indemnity, sole liability and/or liability over as to these Defendants." (ECF No. 25 ¶ 15).

On November 9, 2017, the court ordered Koreny to show cause why the court should not dismiss the action with respect to defendant Morrissey because she had not served the complaint on Morrissey. (ECF No. 32). Koreny responded to that show cause order on November 16, 2017, and advised that she expended reasonable efforts but had difficulty serving defendant Morrissey, whom she alleges was an escaped fugitive. (ECF No. 36 at 4). She moved to extend the time for service (ECF No. 35), which was granted (ECF No. 40). Koreny served Morrissey on November 13, 2017, (ECF No. 34), and Morrissey filed her answer to the complaint on November 30, 2017. (ECF No. 44).

On November 16, 2017, Koreny filed a motion for leave to file amended complaint with brief in support (ECF Nos. 37, 38), with a proposed amended complaint attached to the motion (ECF No. 37-2). Brentwood defendants oppose Koreny's motion to amend (ECF Nos. 41, 42). Neither Smith nor Morrissey filed any opposition.

By separate show cause order on November 9, 2017, the court ordered the parties to address whether the court should not decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over the state law claims, particularly with respect to the pendent-party claims against Smith and Morrissey. (ECF No. 33). Koreny filed her brief on supplemental jurisdiction on November 20, 2017 (ECF No. 39), Brentwood defendants filed their brief on supplemental jurisdiction on November 29, 2017 (ECF No. 43), and Smith and Morrissey filed their brief on November 30, 2017. (ECF No. 44). The court held oral argument on the motion to dismiss and motion for leave to amend on December 12, 2018. (ECF No. 46 [Tr. 12/12/17]). Having been fully briefed, the motion to dismiss and motion to amend are now ripe for decision.

## II.      Standard for Determining Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain,

478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

(Id.) (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr, Corp., 809 F.3d 780 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

809 F.3d at 876-77. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (internal citations omitted).[1]

---

[1] Notably, Koreny in her brief in opposition to the motion to dismiss did not acknowledge Twombly and Iqbal in discussion of the Rule 12(b)(6) standard, cited only to decisions predating these two seminal decisions, and only used the term "plausible" in headings and when simply restating Brentwood defendant's arguments. See (ECF No. 16 at 3-5, 11). At argument, plaintiff

### III.    Allegations in the Complaint

During the morning hours of December 15, 2015, Smith was driving in a safe and prudent manner within the posted speed limit on Glendale Street heading towards Elroy Avenue. Smith was driving a vehicle that Morrissey had rented for herself. She permitted him to use the car though she knew he had a suspended or revoked license and knew he was likely to drive the vehicle at an unsafe and unlawful manner, creating unreasonable risk of harm to others. (ECF No. 1, ¶¶ 1, 31-36, 50-52, 107(b), 112-116). Apparently, Smith slightly steered left to maneuver his vehicle around another vehicle stopped in his lane of traffic and eventually turned right onto Elroy Avenue in an allegedly "safe manner." (ECF No. 1, ¶¶ 55, 59). According to Koreny, prior to and during police pursuit of Smith, Wagner had not identified Smith as the driver and did not witness him driving in a manner sufficient to warrant a traffic stop or pursuit. (ECF No. 1, ¶¶ 56- 62). Wagner initiated police pursuit of Smith by reversing his vehicle after a generally unspecified "encounter" near the intersection of Glendale Street and Elroy Avenue. (ECF No. 1 ¶¶ 3, 5, 37, 63). Moments after engaging in pursuit, Wagner had the make, model and license plate of the vehicle rented by Morrissey and driven by Smith. (ECF No. 1 ¶ 68). As part of the pursuit, Wagner drove in excess of the posted speed limits for "many miles" through residential and commercial areas. (ECF No. 1 ¶¶ 3, 4). "The participants in the pursuit drove with reckless disregard, indifference and

_____

acknowledged that <u>Twombly</u> and <u>Iqbal</u> required pleading facts sufficient to support the theory of her claims and asserted that the facts as plead were sufficient. She also urged that certain allegations, such as the requisite intent, should be sufficient even if only generally alleged and alleged without any underpinning factual allegations, Tr. 12/12/17 at 18, 19, 21, despite that facts and circumstances, if sufficient, readily can support an inference of requisite intent. <u>See</u>, <u>e.g.</u>, <u>Beyda v. USAir, Inc.</u>, 697 F. Supp. 1394, 1396 (W.D. Pa. 1988).

abandonment for all persons, places and things in their immediate vicinity throughout this unnecessary event." (ECF No. 1 ¶ 4).

Wagner almost caused a number of accidents during his pursuit of Smith, driving at excessive rates of speed through red lights, stop signs, active school and construction zones, activated school bus stop signals, and congested areas.  (ECF No. 1 ¶ 44-46, 94).  The pursuit continued outside Brentwood.  (ECF No. 1 ¶ 95).  In fleeing police pursuit, Smith was driving in excess of 70 mph.  Smith lost control of his vehicle while trying to negotiate a left curve on Saw Mill Run Boulevard and collided head-on with the vehicle driven by Koreny.  Koreny was driving to work and who was unable to avoid the collision. (ECF No. 1 ¶¶ 1, 6, 9, 11).   As a result of the collision, emergency responders had to extricate Koreny from her vehicle and she sustained a multitude of "catastrophic" and "life threatening" injuries.  (ECF No. 1 ¶¶ 2, 19, 149, 150).

Prior to the accident Wagner did not know Smith's identity.  Also, unknown to Wagner at that time was that a warrant had issued for the arrest of Smith on charges for commission of a crime with a firearm and "forcible felony robbery" and that Smith had a propensity for violence. (ECF No. 1 ¶¶ 72-75).   As a result of the incident, Smith was charged with:  aggravated assault by vehicle, reckless driving, driving while operating privilege is suspended or revoked, accident involving personal injury or death, and fleeing or attempting to elude a police officer.  (ECF No. 1, ¶ 109).

Koreny alleges that Wagner drove at excessive, irrational and unreasonable rates of speed, which directly resulted in Smith driving in a like manner to escape the pursuing officer.  (ECF No. 1 ¶¶ 7, 8, 65-66).   Heynes knew about the high speed pursuit and Smith's flight, and had the authority to call off the pursuit (ECF No. 1 ¶¶, 12, 15, 43).  Heynes initially instructed Wagner to terminate it, (ECF No. 1 ¶ 92), but then permitted the police pursuit to continue.  Both Heynes and

Wagner knew or should have known that the fleeing suspect, Smith, would continue to flee from pursuit and that significant or catastrophic harm to third persons eventually would result. (ECF No. 1 ¶¶ 12, 13, 14, 94).

Koreny asserts generally that police department records contain discrepancies with the dash camera recordings of the pursuit. (ECF No. 1 ¶¶ 17, 18). She refers to the Brentwood Borough Policy and Procedure Manual, which provides that police pursuit should be discontinued once an officer determines the identity of person being pursued and prohibits vehicular pursuits for minor summary violations. (ECF No. 1 ¶¶ 75-79). Koreny contends that if Wagner determined Smith was the driver he should have ceased police pursuit, and in any event, Wagner failed to appraise continuously whether it was prudent to continue his pursuit and should not have pursued by driving at excessive and unreasonable rates of speed, revving his engine while in pursuit. (ECF No. 1 ¶¶ 75, 77-79, 81). With respect to Heynes, Koreny asserts that Heynes "failed to use his best judgement when he permitted Defendant Wagner to carry on with his pursuit," (ECF No. 1 ¶ 80), and failed to call off the pursuit when Smith continued to flee even though it was "the most intelligent and professional course of action." (ECF No. 1 ¶¶ 82, 84).

Koreny avers that Wagner's pursuit and continued pursuit and Heynes' irresponsible decision to permit the pursuit to continue caused "immediate, imminent and foreseeable danger" to the public. (ECF No. 1 ¶¶ 87-88). She contends that once the pursuit continued into the City of Pittsburgh Wagner and Heynes should have but did not: a) notified the City of Pittsburgh, b) allowed the City of Pittsburgh to take control of the situation; c) allowed the City of Pittsburgh representatives onto their airways; and d) obeyed an order by the City of Pittsburgh to terminate the pursuit. (ECF No. 1 ¶¶ 96-98, 99). She asserts that the conduct of Wagner and Heynes violated law, regulation, and statutes applicable to emergency vehicle operation and violated and

"superseded any and all procedures, rules, policies and/or guidelines" of the Brentwood Police Department.  (ECF No. 1 ¶¶ 100-104).   Koreny repeatedly characterizes the conduct of Wagner and Heynes as "negligent, careless and reckless," and responsible for how Smith operated his vehicle when fleeing police pursuit.  (ECF No. 1 ¶¶ 16, 19).   She does not allege, however, that Wagner, Heynes, or Brentwood had the intent to harm either Smith or her in the police pursuit.

## IV.   Analysis

Brentwood defendants argue with respect to the claims asserted against Wagner and Heynes in Count I that Koreny did not set forth sufficient factual allegations to state a plausible § 1983 claim for violation of substantive due process because the allegations are mostly conclusory legal conclusions and do not rise to the required level that "shocks the conscience."  Additionally, they argue that Wagner and Heynes are entitled to qualified immunity.   With respect to the claims asserted against Brentwood in Count II, Brentwood argues that the allegations are insufficient to show a plausible claim for municipal liability under a failure to train theory and because there is no underlying constitutional violation, there can be no municipal liability.   With respect to the claims in Count III asserted against all three Brentwood defendants for state law negligence, they argue that the court should decline supplemental jurisdiction after dismissing the federal claims, and that the negligence claim against Heynes fails because it does not fall within vehicle liability exception to immunity.   Finally, with respect to Counts II and III, Brentwood argues that punitive damages are not recoverable against it.

### A.  Claim for violation of substantive due process (Counts I and II)

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983.  Section 1983 is the statutory means for vindicating a violation of federal rights conferred elsewhere and is not itself a source of any substantive constitutional rights.  Graham v. Connor, 490 U.S. 386, 393-394 (1989).  Thus, "[t]o make a prima facie case under § 1983, the plaintiff must demonstrate that a person acting under color of [state] law deprived him of a federal right."  See Groman v. Manalapan, 47 F.3d 628, 633 (3d Cir. 1995); Ickes v. Borough of Bedford, 807 F.Supp.2d 306, 315 (W.D. Pa. 2011).  Koreny claims a violation of substantive due process guaranteed her by the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty or property without due process of law."  U.S. CONST. AMEND. XIV.  "The touchstone of due process is the protection of the individual against arbitrary action of government."  Miller v. City of Phila., 174 F.3d 368, 374 (3d Cir. 1999) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).  That guarantee includes a substantive due process guarantee that extends beyond just fair process to bar certain government actions regardless of the fairness in any process afforded.  County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).

Koreny entitles Count I as "Substantive Due Process Violations Under the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983," and includes in the averments that Wagner and Heynes violated Koreny's Fourth and Fourteenth Amendment rights.  (ECF No. 1, ¶¶ 170, 171).  Her arguments, however, focus on substantive due process and not Fourth Amendment jurisprudence.  In general, a court must discern whether a more particularized amendment applies rather than generalized notions of substantive due process.  Albright v. Oliver, 510 U.S. 266, 273 (1994)

(citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)). The allegations in this police pursuit case are properly analyzed under substantive due process because, for example, there was no seizure of Koreny by the police susceptible of analysis under the Fourth Amendment as undertaken in <u>Scott v. Harris</u>, 550 U.S. 372, 376 (2007) (involving the seizure by police as part of a police vehicle pursuit), and <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 845 (1998) (analyzing the claim of injury to bystander as part of police pursuit under substantive due process).

Where the defense of qualified immunity is raised, the court has discretion to consider in what order it addresses the issue whether the plaintiff has shown a deprivation of a constitutional right and the issue whether that right is clearly established at the time of the alleged violation. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). Nevertheless, the order described in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001) (addressing first the showing of the deprivation of a constitutional right), often will be a helpful approach. Here, the court first considers whether the factual allegations in the complaint are sufficient to show a plausible claim for "a deprivation of a constitutional right at all." <u>Lewis</u>, 523 U.S. at 841 n. 5 (1998); <u>Graham</u>, 490 U.S. at 394.

### 1) <u>Alleged violation of substantive due process by Wagner and Heynes</u> (Count I)

In their motion to dismiss, Brentwood defendants argue that because the claims in Count I do not contain allegations of any intent to harm Koreny or another person, no constitutional violation can be shown (ECF No. 13 ¶ 17).

Where a municipal officer is alleged to have engaged in abusive action, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." <u>Lewis</u>, 523 U.S. at 848. To create liability, the conduct "must be so ill-conceived

or malicious that it 'shocks the conscience.'" Miller, 174 F.3d at 375. The degree of wrongful conduct needed to satisfy the "conscience-shocking" standard depends upon the context of the particular case. Id. In other words, deliberate indifference or even arbitrary action may rise to the required level in one setting, but fall short in another. Id. at 375-76. Ultimately, in assessing substantive due process claims, consideration must be given to the rights involved, the degree of deprivation, the setting in which the action occurred, and the time available for the actor to reflect or consider the risks and repercussions of a particular course of action. Id.

### a) *Lewis* and *Davis* require intent to harm

In Lewis, the Court resolved the required standard of culpability under substantive due process on the part of law enforcement in a vehicular pursuit case. 532 U.S. at 839. The Court announced the dichotomy it recognized between cases, such as ones involving police conduct occurring in pretrial custody, and cases, such as the one then before that Court and now before this court, involving high-speed pursuit by law enforcement. The Supreme Court in Lewis determined that high speed police pursuit categorically called for instantaneous and pressured decisions without the ability to fully consider the risks, Miller, 174 F.3d at 375, which generally would be afforded in pretrial custody cases.

Koreny attempts to distinguish this case from Lewis on the basis that Lewis involved a 75-second chase, and this case involved a 5-minute and 40-second chase. Tr. 12/12/17 at 22. That a police pursuit, such as the one involved in this case, continues a few minutes more than the one in Lewis, does not render it a situation permitting for reflection. Both Lewis and Davis v. Township of Hillside, 190 F.3d 167 (3d Cir. 1999), involved more than split second pursuits. Lewis did not indicate that in a high speed pursuit case to meet the "shocks the conscience" standard the degree of culpability would be determined on a case by case basis by clocking the minutes of the pursuit

and might at times require only deliberate indifference or reckless disregard on the part of the pursuing officer or others involved in pursuit decision-making; rather, the Court explicitly laid down a bright line rule. As such, to defeat the motion to dismiss, Koreny must point to factual allegations sufficient to plausibly show Wagner or Heynes' intent to harm.

Lewis addressed head on the issue of "whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing [injury of a passenger] through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." 523 U.S. at 836. To that question, the Supreme Court responded "no" and instructed "that in such circumstances **only a purpose to cause harm** unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a [substantive] due process violation." Id.

Lewis involved an action for violation of substantive due process brought pursuant to § 1983 on behalf of the estate of the innocent passenger killed as a result of a police pursuit of the driver for a traffic violation. The officer in Lewis was faced with a driver of a motorcycle who was operating the motorcycle at a high rate of speed with a sixteen-year old passenger on the back. The officer turned on the patrol car lights, ordered the driver to stop, and pulled his patrol car next to a fellow officer's patrol car in order to pen in the motorcycle. The driver of the motorcycle refused to pull over, maneuvered it between the two patrol cars, and sped off. A fellow officer switched on his emergency lights and siren and began to pursue the motorcycle at a high speed through a residential neighborhood. During pursuit, the motorcycle reached speeds up to 100 miles an hour with the patrol car following at an extremely close distance considering the rate of speed. The motorcycle driver attempted a sharp turn, but tipped over, and the officer in pursuit attempted to stop but was unable to do so due to how closely he was following the

motorcycle, which was at times only 100 feet, and the speed of the patrol vehicle, which would have required 650 feet to stop. 523 U.S. at 836-37. The officer skidded into the innocent passenger at 40 mph resulting in the passenger being thrown by the impact and the passenger's death at the scene.

In <u>Lewis</u>, the Court explained the officer

> was faced with **a course of lawless behavior** for which the police were not to blame. They had done nothing to cause [the pursued driver's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes. [The driver's] outrageous behavior was practically instantaneous, and so was [the officer's] instinctive response. While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the pursued driver's] lawlessness, or to terrorize, cause harm or kill. Prudence, that is, was subject to countervailing enforcement considerations, and while [the officer] exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part.

523 U.S. at 855 (emphasis added).

The Supreme Court held in <u>Lewis</u> that even though the officer violated a general order on police pursuits and his conduct could be considered an offense to reasonableness and to sound code of law enforcement practice, his actions did not constitute the required "conscience shocking" behavior to state a claim for violation of substantive due process. The Supreme Court made clear that the level of conduct required to show a violation of the innocent passenger's substantive due process rights was beyond reckless or even deliberate indifference to the life of the passenger and required a showing of a purposeful intent to harm unrelated to the legitimate object of arrest, which it found was not met in that case. 523 U.S. at 836.

In Davis, the Court of Appeals for the Third Circuit, applying Lewis, upheld the denial of a substantive due process claim brought by an innocent bystander injured during a police vehicular pursuit. Similar to the facts plead here, vehicular pursuit occurred when police attempted to pull over the driver of a vehicle. 190 F.3d at 169. The driver refused to stop the vehicle, resulting in the pursuit. The pursuit ended when an officer utilized a "bump procedure" by **intentionally** hitting the rear of the driver's vehicle with his police cruiser, causing the driver to hit his head on the steering wheel and pass out, which in turn caused the driver's vehicle to spin out of control and hit two other vehicles, one of which hit the plaintiff. Id. The court explained:

> as in Lewis, the officers were faced with lawless behavior-**the flight from their investigation**-for which they were not to blame. They had done nothing to cause Cook's high-speed driving or his flouting of their law-enforcement authority. Cook's action was instantaneous and so, by necessity, was the officers' response. Their intent was to do their job as law enforcement officers, not to cause injury. If they acted recklessly or imprudently, **there is no evidence that their actions were tainted by an improper or malicious motive**.

Id. at 171 (internal citations omitted) (emphasis added).

Koreny argues that because Lewis and Davis were decided at the summary judgment stage, these decisions do not counsel in favor of dismissal. Tr. 12/12/17 at 18. Admittedly, Koreny does not have to point to record evidence at this stage, but she must—consistent with Twombly and Iqbal—put forth factual allegations, as opposed to bald and conclusory statements, providing a plausible basis for relief in order for her claims to survive the motion to dismiss. Here she did not do so and under Lewis and Davis, which provide the deciding constitutional principles, dismissal is appropriate.

*b) Scott found a pursuing officer's similar conduct objective reasonable*

In Scott what ended up being a **ten-mile pursuit** began with a deputy attempting to pull over the driver of the speeding vehicle and when the driver refused to pull over a chase ensued. Another deputy joined the pursuit after hearing radio communication about the chase. The fleeing vehicle raced "down narrow, two-lane roads in the dead of the night at speeds that [were] shockingly fast." 550 U.S. at 379. Six minutes and ten miles into the chase, the officer attempted to terminate the episode by bumping into the rear of the fleeing driver's vehicle to cause a spin and stop of the fleeing vehicle. At the time "when [the officer] rammed [the fleeing driver's] vehicle it was not threatening any other vehicle or pedestrians." 550 U.S. at 380, n.7. Instead of a spin and stop, the bump by the patrol car caused the fleeing driver's vehicle to leave the roadway, run down an embankment, overturn and crash, rendering the driver a quadriplegic.

Although Scott involved the use by the officer of a bump procedure in a police vehicular pursuit to stop the fleeing suspect, which rendered it properly analyzed under the Fourth Amendment, it is instructive because the Supreme Court found the officer's conduct in Scott **objectively reasonable** even though he employed a dangerous driving procedure requiring intentional contact. If that conduct of law enforcement would be viewed as objectively reasonable, the conduct here could not "shock the conscience."

*c) Flight is the individual fleeing driver's decision and is not caused by police pursuit*

Koreny asserts that the police pursuit somehow caused Smith's conduct of inappropriate and erratic driving, speeding through residential neighborhoods, ignoring traffic signals, and continuing flight. (ECF No. 1, ¶¶ 8, 44). She posits that "if only" Wagner had stopped pursuit she would not have been injured. The Supreme Court has held on multiple occasions that the decision to engage in flight and to ignore police warnings to stop causing risk to innocent

bystanders results, not from the pursuit by law enforcement, but from the fleeing suspect intentionally placing himself and others in danger by unlawfully engaging in reckless flight. Lewis, 523 U.S. at 855; Scott, 550 U.S. at 384; Plumhoff v. Rickard, 134 S.Ct. 2012 (2014).

In Plumhoff, 134 S.Ct. at 2021 n. 3, a recent Fourth Amendment deadly force case, the Court found irreconcilable with its precedent the position that the danger presented by a police chase was caused by officer's decision to continue the chase as opposed to driver's decision to continue flight, despite that it in essence insulates the officer from constitutional attack by innocent bystanders who are harmed or killed as a result of the chase. See Davis, 190 F.3d at 170 n. 2. For purposes of the substantive due process analysis, Koreny's contention that police pursuit "caused" Smith's conduct must be rejected.

The Supreme Court squarely addressed this scenario in Scott, *albeit* in the context of its Fourth Amendment analysis of the reasonableness of the officer's conduct. Scott explained:

> But wait, says respondent: Couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? . . . First, of all, there would have been no way to convey convincingly to respondent that the chase was off and he was free to go. Had respondent looked in his rearview mirror and seen the police cars deactivate their flashing lights and turn around, he would have had no idea whether they were truly letting him get away, or simply devising a new strategy for capture. Perhaps the police knew a shortcut he didn't know, and would reappear down the road to intercept him; or perhaps they were setting up a roadblock in his path. Given such uncertainty, respondent might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow.

550 U.S. at 385.

The Supreme Court commented in Scott that it is

> loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90

miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned by recklessness.

550 U.S. at 385-386 (emphasis in original).

*d) Violation of Police Policy on Pursuit is Insufficient*

Koreny's allegations that Wagner, and perhaps even Heynes, failed to follow police policy on pursuit driving is insufficient. First, the policy itself cited to and relied on by Koreny emphatically states:

> The purpose of this policy is to provide Brentwood Police Officers with general guidelines on pursuit and emergency driving. This policy is for departmental use only and should not be construed as a creation of a higher standard of safety or care in an evidentiary sense with respect to third party claims.

(ECF No. 1-1 at 1; .01 PURPOSE). Secondly and more importantly, Koreny seeks to elevate departmental policy and state law with respect to driving of emergency vehicles to a federal constitutional standard, but <u>Lewis</u> and <u>Davis</u> forestall her approach—both <u>Lewis</u> and <u>Davis</u> involved violations of police regulations or orders and both decisions found those violations to be insufficient to meet the federal constitutional standard for substantive due process.

In <u>Davis</u> the Court of Appeals explained:

> In <u>Lewis</u>, the court of appeals had reversed summary judgment for the defendant officer, finding a triable issue of fact because he had apparently disregarded the Sacramento County Sheriff's Department's General Order on police pursuits. The Supreme Court reversed, holding that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment. . . . <u>Lewis</u> thus squarely refutes plaintiff's contention that the officers' violation of police department regulations, which might be probative of recklessness or conscious disregard of plaintiff's safety, suffices to meet the shocks-the-conscience test under the due process clause.

190 F.3d at 170 (internal quotations and citations omitted). In <u>Lewis</u> the Court stated: "[r]egardless of whether [the defendant's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983." 523 U.S. at 855.

Koreny repeatedly argues that Heynes' conduct was reckless. Following the requirements of <u>Lewis</u> and <u>Davis</u>, even if Wagner's conduct in continuing pursuit and Heynes' conduct in permitting continued pursuit of the vehicle driven by Smith into residential and commercial traffic may be characterized as ill-advised, reckless, and violating sound law enforcement practice, viewing the allegations in the light most favorable to Koreny, the allegations are insufficient to support that their conduct is "conscience shocking" or reveal the intent to harm required to conclude that there is a plausible claim for a violation of substantive due process.

If the conduct in <u>Lewis</u> involving police in a cruiser chasing a motorcycle at dangerous speeds and driving dangerously close to the motorcycle with a teenage passenger on the back for a traffic violation and continuing the pursuit at breakneck speeds through residential neighborhoods with the officer following from a dangerously close distance, all done in violation of police policy, and the conduct in <u>Davis</u> involving the intentional ramming of a pursued vehicle in violation of a general order do not constitute "conscience shocking" behavior or evidence an intent to harm not related to objective of arrest by the officer, then Koreny's claims necessarily cannot be plausible under substantive due process.

She points to her allegations that Wagner called in the license plate during the pursuit, arguing that he could have assessed who the driver was and should have ceased pursuit in accordance with policy guidance with respect to terminating pursuit once the driver is otherwise known. (ECF No. 16 at 2). In addition to the violation of policy being inadequate, Koreny ignores

her other allegations that the car driven by Smith was a borrowed rental car.   Calling in the license

plate during the police pursuit would not have revealed the driver during the pursuit both because

the vehicle was a rental and because the renter was not the driver.   Indeed, Koreny at the same

time avers that Smith had not been identified as the driver (perhaps because the warrant for his

arrest on very serious charges then might have been known to Wagner and Heynes in continuing

pursuit).  Her arguments along these lines are fruitless.  In <u>Scott</u>, though it involved analysis under

the Fourth Amendment's reasonableness standard, the Supreme Court found no violation.  The

officer's conduct was recognized to be objectively reasonable, even though the pursuing officer

had called in the license plate of the traffic violator, yet continued pursuit, engaged in a

"Hollywood-style car chase," and terminated the pursuit only by ramming his patrol vehicle into

the fleeing suspect's vehicle, which in turn caused injury to a bystander.  550 U.S. at 380-81.

Koreny points to Wagner's continued pursuit despite the alleged direct order by the City

of Pittsburgh Police for him to terminate pursuit.  Even if Wagner disobeyed an order by Heynes

or a representative of the Pittsburgh Police, that conduct, like the alleged violation of other policy

and code, does not satisfy the "shocks the conscience" test or show intent to harm.  Moreover,

Pennsylvania law does not support Koreny's contention that a direction from the City of Pittsburgh

Police Department would require Wagner to terminate pursuit.

Section 8953, 42 Pa. Cons. Stat., provides:

§ 8953.  Statewide municipal police jurisdiction
**(a) General rule.--**Any duly employed municipal police officer who is within this
Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall
have the power and authority to enforce the laws of this Commonwealth or
otherwise perform the functions of that office as if enforcing those laws or
performing those functions within the territorial limits of his primary jurisdiction
in the following cases:
***

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

***

**(c) Relinquishing authority.--**Whenever a municipal police officer exercises any power or authority over any person or event pursuant to the provisions of subsection (a)(3), (4), (5) or (6), the officer shall relinquish authority and control over any such person or event upon the request of the chief law enforcement officer, or a person authorized by him to make the request, of the organized law enforcement agency which regularly provides primary police services in the municipality.

42 Pa. Cons. Stat. § 8953. Subsection (a)(2) with respect to hot pursuit is not enumerated among the situations in which the officer must relinquish authority and control of the event on request from the municipality into which the pursuing authority has travelled. Regardless, the context of pursuit, in light of the reasoning in Lewis, Davis, and Scott, does not render Wagner's alleged conduct "conscience shocking" as is required, and under Scott likely would not even be unreasonable. More importantly, there is nothing in her allegations to suggest on the part of Wagner and Heynes the requisite intent to harm physically either Smith or Koreny.

Koreny argues that intent is not required and Lewis does not apply because there was no legitimate objective to pursuing Smith. Her position defies the import of relevant and binding court decisions. Here, the traffic violations by Smith would be rather obvious because, according to the allegations, he was travelling over 70 mph in residential areas. Scott, Lewis and Davis, all involved pursuit initiated for a traffic violation. Regardless whether the initial encounter did or did not give sufficient reason in Koreny's estimation for initiating the pursuit, the continued flight of Smith in violation of traffic laws, including driving over 70 miles per hour and above the posted speed limit prior to the accident, would in any event provide Wagner with a legitimate basis to stop Smith. Koreny's allegations that Wagner did not know that Smith had an

outstanding warrant for his arrest for weapons violations and burglary when he was in pursuit do not change this analysis. Even as she alleges that Wagner was driving at high rates of speed and somewhat recklessly, Smith by her averments was doing the same and putting the community at risk. Lewis, Scott and Davis fully recognize the legitimate objective of stopping the pursued driver even though an officer in pursuit was dangerously or recklessly driving. The evidence viewed in the light most favorable to Koreny simply does not rise above the high bar to show plausibly a purpose by Wagner or Heynes to cause her harm unrelated to the legitimate object of arrest of the driver of the vehicle and only such a purpose will do. Accordingly, the complaint fails to plead a plausible claim of violation of Koreny's substantive due process rights.

*e) Koreny seeks to apply a lower standard*

Finally, Koreny relies on Sauers v. Homanko, No. 2:16cv811, 2017 WL 590273 (M.D. Pa. Feb. 14, 2017), appeal filed at Appeal No. 17-1591 (3d Cir. Mar. 22, 2017), to argue a lesser standard than intent to harm applies to her substantive due process claim. In Homanko, the officer observed a summary traffic offense and determined to apprehend the driver. In attempting to do so, he had to turn his police cruiser around. He drove 100 mph in order to "catch up" to the driver, who was not speeding or fleeing, and failed to negotiate a curve in the road, lost control, and collided with the vehicle driven by plaintiff who was travelling in the opposite direction, thereby injuring the plaintiff and killing his wife, who was a passenger. The driver of the vehicle the officer was trying to catch up to was stopped by officers in a nearby jurisdiction, but was not cited. 2017 WL 590273, at *4.

In Homanko the district court carefully distinguished the alleged facts in that case from Lewis on the basis that the driver to whom the officer was attempting to "catch up to" was not travelling at a high rate of speed and was not in flight and only the officer was speeding. On its

face <u>Homanko</u> is distinguishable from the allegations here where Wagner was in pursuit of Smith and Smith was exceeding 70 mph in residential neighborhoods and collided with Koreny's vehicle. <u>Homanko</u> is not instructive because it is factually distinct from this case and <u>Lewis</u>, which lays down a bright line rule for police pursuit cases analyzed under substantive due process.

Koreny attempts to weave a proposition that according to her allegations, Wagner was not justified in his initial decision to pursue and that takes this case out of the confines of <u>Lewis</u> and <u>Davis</u>. Here, the facts as alleged depict that Smith was driving well over the speed limit in residential neighborhoods to flee from Wagner's attempts to pull him over. However the pursuit started, and putting aside for the moment plaintiff's own assertion in the complaint with respect to the warrant for Smith's arrest on very serious charges and the charges he faced as a result of the challenged incident, <u>the continued pursuit</u>, which is the very basis articulated for Koreny's claims, involved Smith's lawlessness, and the pursuing officer, and officer in charge for that matter, faced hyper-pressurized situations, forming the very same basis for the Supreme Court's pronouncement in <u>Lewis</u> and putting this case squarely within its holding.

This action is in essence a state law negligence action that Koreny attempts to force into a federal constitutional construct—a very difficult one under substantive due process. Justice Anton Scalia in his concurrence in <u>Lewis</u> explained the problems with Koreny's constitutional claim:

> To hold, as respondents urge, that all government conduct deliberately indifferent to life, liberty, or property violates the Due Process Clause would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. Here, for instance, it is not fair to say that it was the police officer alone who "deprived" Lewis of his life. Though the police car did run Lewis over, it was the driver of the motorcycle, Willard, who dumped Lewis in the car's path by recklessly making a sharp left turn at high speed. (Willard had the option of rolling to a gentle stop and showing the officer his license and registration.) Surely Willard "deprived" Lewis of his life in every sense that the police officer did. And if Lewis encouraged Willard to make the reckless turn, Lewis himself would be responsible, at least in part, for

his own death. Was there contributory fault on the part of Willard or Lewis? Did the police officer have the "last clear chance" to avoid the accident? Did Willard and Lewis, by fleeing from the police, "assume the risk" of the accident? These are interesting questions of tort law, not of constitutional governance. Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. As we have said many times, the Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation.

If the people of the State of California would prefer a system that renders police officers liable for reckless driving during high-speed pursuits, [t]hey may create such a system . . . by changing the tort law of the State in accordance with the regular lawmaking process. For now, they prefer not to hold public employees "liable for civil damages on account of personal injury to or death of any person or damage to property resulting from the operation, in the line of duty, of an authorized emergency vehicle . . . when in the immediate pursuit of an actual or suspected violator of the law." Cal. Veh.Code Ann. § 17004 (West 1971). It is the prerogative of a self-governing people to make that legislative choice. "Political society," as the Seventh Circuit has observed, "must consider not only the risks to passengers, pedestrians, and other drivers that high-speed chases engender, but also the fact that if police are forbidden to pursue, then many more suspects will flee—and successful flights not only reduce the number of crimes solved but also create their own risks for passengers and bystanders." Mays v. City of East St. Louis, 123 F.3d 999, 1003 (C.A.7 1997). In allocating such risks, the people of California and their elected representatives may vote their consciences. But for judges to overrule that democratically adopted policy judgment on the ground that it shocks *their* consciences is not judicial review but judicial governance.

Lewis, 523 U.S. at 863–65 (1998) (Scalia, J., concurring) (citations omitted).[2]

None of Koreny's allegations with respect to the officer's conduct rise to the level of actions that "shocks the conscience" or are suggestive of the required specific intent to harm, rather than a generalized risk of harm to the public. In sum, based upon the controlling authority, Koreny's allegations are insufficient to show plausibly a violation of Koreny's substantive due process rights by Wagner and Heynes, and accordingly, Count I will be dismissed with respect to

---

[2] Here, unlike in Lewis, state law provides the possibility of some recovery under a negligence theory. See 42 PA.CONS. STAT. ANN. § 8542(b)(1).

Wagner in his individual capacity. Unless Koreny's allegations are sufficient to state a claim for supervisory liability of Heynes in his individual capacity, the claim against Heynes likewise will be dismissed.

*f)"Supervisory liability" of Heynes in his individual capacity*

Brentwood defendants argue that, assuming Koreny can show a constitutional violation, Koreny fails to allege facts plausibly to show Heynes' liability in his individual capacity. To establish personal liability of a supervising official in his individual capacity she must show that he knowingly established or maintained a policy, practice or custom that deprives a person of their constitutional rights, thereby evincing deliberate indifference to the constitutional harm caused to the individual, or that he participated in the deprivation of rights, directed others to violate those rights or as the one in charge had knowledge and acquiesced in the constitutional violations by the subordinate. Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) (citing A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

Koreny must plead facts plausibly demonstrating that Heynes directed Wagner to conduct the pursuit in a manner he knew or reasonably should have known would cause Wagner to violate Koreny's substantive due process rights. 629 F.3d at 130. First and foremost, under Lewis the allegations are insufficient to show plausibly that Wagner violated Koreny's substantive due process rights. There also are no averments of past constitutional violations. There are no averments that Heynes directed Wagner to conduct the pursuit, much less to conduct it in a manner to violate Koreny's rights. There also are no averments sufficient to plausibly show Heynes' knowledge of conduct by Wagner likely to violate Koreny's rights—that is, Heynes' knowledge of any intent to harm Koreny, or even any intent on the part of Heynes. Koreny failed to allege facts to show plausibly Heynes' knowledge of a constitutional violation by Wagner or a prior

pattern of similar constitutional violations or facts and circumstances communicating approval of or acquiescing in the same. Finally, her alleged facts do not plausibly show any policy, practice or custom by Heynes. Accordingly, Count I against Heynes in his individual capacity will be dismissed.

*g) Official Capacity Suit against Wagner and Heynes*

Brentwood defendants also move to dismiss the claims against Wagner and Heynes in their official capacities on the basis that public officials named in their official capacities are not persons within the meaning of § 1983 and these claims are in essence claims against the municipality that are appropriately addressed under Count II against Brentwood, and must therefore meet the requirements of <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), as discussed in the following section. (ECF No. 14 at 10). Koreny admits that the official capacity claims against Wagner and Heynes in Count I must comply with <u>Monell</u>, but argues in opposition that these claims against Wagner and Heynes should not be dismissed just because they are redundant or duplicative of her claim directly against Brentwood. (ECF No. 16 at 11).

"Official capacity claims against state and local officials, are, essentially, another way of proceeding against a municipality," <u>Ford v. City of Pittsburgh</u>, Civ. Act. No. 13-1364, 2014 WL 7338758, at *5 (W.D. Pa. Dec. 22, 2014); <u>see</u> <u>also</u> <u>Melo v. Hafer</u>, 502 U.S. 21, 25-26 (1991), and they "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690, n. 55. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. <u>Brandon v. Holt</u>, 469 U.S. 464, 471–472 (1985). "It is *not* a suit against the official personally, for the real party in interest is the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). It "is functionally a suit against the public entity that employs

them," and therefore redundant. <u>Cuvo v. De Biasi</u>, 169 F.App'x 688. 693 (3d Cir. 2006) (affirming dismissal of duplicative claims) (citing <u>McMillian v. Monroe County</u>, 520 U.S. 781 (1997), and <u>Kentucky</u>, 473 U.S. at 165-66). Dismissal of the duplicative claims in Count I against Wagner and Heynes in their official capacities is appropriate. <u>Blair v. City of Pittsburgh</u>, Civ. Act. No. 14-1473, 2015 WL 4162400 (W.D. Pa. July 9, 2015); <u>Ford</u>, 2014 WL 7338758; <u>Thomas v. City of Chester</u>, Civ. Act. No. 15-3955, 2016 WL 1106900, at * 2 (E.D. Pa. Mar. 21, 2016) (citing <u>Moore v. City of Phila.</u>, Civ. Act. No. 14-133, 2014 WL 859322 at *3 (E.D. Pa. Mar. 5, 2014) (dismissing claims as redundant based upon court's inherent authority to "achieve the orderly and expeditious disposition of cases")); <u>see</u> FED.R.CIV. P. 1. Accordingly, Count I against Wagner and Heynes in their official capacities as well as their individual capacities will be dismissed.

### 2) **Qualified Immunity**

Brentwood defendants additionally argue that Wagner and Heynes are entitled to qualified immunity on the § 1983 claim. Qualified immunity protects from suit government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). It is the defendants' burden to establish entitlement to qualified immunity. <u>Kopec v. Tate</u>, 361 F.3d 772, 776 (3d Cir. 2004). To determine qualified immunity, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right" and also "ask whether the right was clearly established." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

> The crux of the "clearly established" analysis is whether officers have "fair notice" that they are acting unconstitutionally. In other words, an officer is not entitled to qualified immunity if "at the time of the challenged conduct, the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he [was] doing violates that right." <u>Ashcroft v. al-Kidd</u>, 563

> U.S. 731, 741 (2011) (alteration and internal quotation marks omitted). "We do not
> require a case directly on point, but existing precedent must have placed the
> statutory or constitutional question beyond debate." *Id*. The dispositive question is
> whether the violative nature of *particular* conduct is clearly established. This
> inquiry must be undertaken in light of the specific context of the case, not as a broad
> general proposition. Accordingly, the specific question presented by this case is
> whether, on January 13, 2013, the law clearly established that an officer who, in an
> attempt to eliminate the serious threat of immediate harm to others created by a
> vehicle's flight shoots the vehicle's passenger, violates that passenger's rights under
> the Fourth Amendment. We hold that it did not.

Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017) (internal quotations and

citations omitted) (involving seizure of passenger of fleeing vehicle by shooting).

Koreny argues that determinations of qualified immunity are inappropriate at the motion

to dismiss stage, (ECF No. 16 at 9), citing to *dicta* in a footnote in the unpublished case of Newland

v. Reehorst, 328 F.App'x 788, 791 n.3 (3d Cir. 2009). Newland cautioned against wading into

qualified immunity analysis at early stages in the case, yet affirmed the district court's very grant

of dismissal at the beginning of the case. In Scott, the Supreme Court in discussing why the denial

of qualified immunity is an immediately appealable interlocutory order, explained:

> Qualified immunity is an *immunity from suit* rather than a mere defense to
> liability; and like an absolute immunity, it is effectively lost if a case is
> erroneously permitted to go to trial. Thus, we have held that an order denying
> qualified immunity is immediately appealable even though it is interlocutory;
> otherwise, it would be "effectively unreviewable." Further, we repeatedly have
> stressed the importance of resolving immunity questions **at the earliest possible
> stage** in litigation.

Scott, 550 U.S. at 376 (internal quotations and citations omitted) (emphasis added).

The defense protects not only the right to avoid standing trial, but also to avoid *pretrial*

burdens, such as discovery that are peculiarly disruptive of effective government. Behrens v.

Pelletier, 516 U.S. 299, 308. In determining whether the allegations plausibly state that the

officer violated clearly established law, the query must be particularized to the facts of the case

and qualified immunity is not defeated by allegations that the officers violated rights in the abstract. White v. Pauly, 137 S. Ct. 548, 552 (2017).

The motion to dismiss the § 1983 claims against Wagner and Heyes also will be granted on the basis of qualified immunity. Koreny argues that a reasonable officer would know that high speed police pursuit through a city or crowded street would place innocent bystanders such as Koreny at risk of personal injury and to their bodily integrity. (ECF No. 16 at 10). But knowledge of risk or even taking that risk does not establish any "conscience shocking" conduct or put a reasonable officer on notice that his conduct violates substantive due process; Koreny applies a negligence standard to a substantive due process claim. Under Koreny's approach, an officer's negligent conduct would defeat qualified immunity—a proposition for which she does not offer and cannot find support.

Koreny's reliance on Homanko to urge using a lower standard for substantive due process claims in police pursuit cases than intent to harm if the officer had some time to deliberate on pre-chase judgments makes the case for Wagner and Heynes on qualified immunity. She admits as much when she states: "[f]inally it is far from clear that the Lewis standard is the one to be applied here." (ECF No. 16 at 7). Lewis, decided prior to the events involving Koreny, clearly instructed the test is intent to harm in high speed pursuits, and Homanko is a district court case decided on February 14, 2017, which was well after the events at issue here. Were the Court of Appeals for the Third Circuit to adopt the reasoning of that district court on appeal in Homanko, it would constitute a pronouncement after the events in question in this action, which could not alter Wagner and Heynes' entitlement to qualified immunity. Even if this court now held that something less than the intent to harm would suffice in this high speed police pursuit matter, which it cannot do consistent with Supreme Court authority, a reasonable officer at the time of the events in question

would not have known that his conduct violated a clearly established constitutional right. Ultimately, even with possible amendment, the qualified immunity hurdle appears insurmountable.

### 3) **Municipal liability of Brentwood under Failure to Train Theory** (Count II)

Koreny sues Brentwood in Count II pursuant to § 1983 under a failure to train theory of liability. Brentwood argues that her claim against it fails because she cannot show a violation of her substantive due process rights by the individual officers, it contains nothing more than conclusory allegations, and it does not specify what forms of training were lacking that would have prevented the alleged constitutional violation. (ECF No. 14 at 10, 11). Brentwood argues, Koreny makes no allegations with respect to a pattern of similar constitutional violations by untrained Brentwood officers such that Brentwood would have been on notice of the particular need for training and that failure to train would reflect deliberate indifference by the municipality to the violation of Koreny's substantive due process rights. Id.

Koreny retorts in her brief only that: 1) she outlined the Brentwood Borough Police Department policies and procedures in place that Wagner and Heynes failed to follow; 2) Wagner and Heynes' failure to **strictly follow** police department policy results from inadequate training and shows deliberate indifference; and 3) she does not have to provide allegations that plausibly show a pattern of similar constitutional violations by untrained Brentwood officers on a motion to dismiss. She contends that Brentwood by its motion to dismiss is improperly trying to prevent her from conducting an investigation to establish the requisite pattern. (ECF No. 16 at 12). Again, Koreny ignores the requirements of Twombly and Iqbal. She is improperly attempting to set up a strict constitutional liability for failure to follow procedure, which was rejected by Lewis and Davis.

Ordinarily, in order to hold a municipality such as Brentwood liable under § 1983, there first must be a constitutional injury caused by its officers.  City of Los Angeles v. Heller, 475 U.S. 796 (1986).  "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that [a policy, custom or practice] might have *authorized* the [constitutional violation] is quite beside the point."  475 U.S. at 799 (emphasis in original); see also Flanders v. Dzugan, 156 F. Supp. 3d 648, 682 (W.D. Pa. 2016) ("[A] predicate constitutional violation must be shown to exist.").  Because Koreny did not allege a plausible violation of her constitutional rights by Wagner and Heynes, her claim against Brentwood would fail under Heller.  She, however, relies on an opinion by the Court of Appeals issued in Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994) ("Fagan I"), post-Heller to argue Heller does not defeat her claim.  Even assuming Koreny adequately alleged a substantive due process claim against Wagner and Heynes or can avoid the force of Heller in this case, as discussed infra, she did not adequately plead a plausible claim for the liability of Brentwood.

The United States Supreme Court held in City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), "that the inadequacy of police training may serve as the basis for liability under § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  489 U.S. at 388.  Municipal liability for failure to train, however, is exceedingly narrow.  Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001).  In order for liability to arise under Monell on a failure to train theory, the "failure to train its police officers must reflect a deliberate or conscious choice by policymaking officials, such that one could call it [Brentwood's] policy or custom."  Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003).  That failure also must have inflicted the injury— the constitutional violation.  436 U.S. at 694.

> Establishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to . . . the alleged constitutional deprivations.

Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

An assertion that a constitutional injury could have been avoided with more or better training is insufficient. City of Canton, 489 U.S. at 391. "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." 489 U.S. at 391. "While claims such as [Koreny's]—alleging that [Brentwood's] failure to provide training to [its police officers] resulted in the constitutional deprivation she suffered—are cognizable under § 1983, they can only yield liability against a municipality where [Brentwood's] failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." 489 U.S. at 392.

According to Koreny, by pointing to the policies and procedures in effect that were not adhered to she somehow has shown the requisite affirmative link between policy and a violation of her constitutional right, relying on Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) (plurality opinion). (ECF No. 16 at 12). Under her theory a violation of a constitutional right would occur any time a person was injured and a policy was not followed by police. The Supreme Court specifically warned against use of this generalized theory in Tuttle, 471 U.S. at 824, and rejected as inadequate the assertion of a nebulous policy of inadequate training, particularly where the matter involved a single incident as opposed to a pattern. This approach, according to Tuttle, improperly circumvents Monell's limitations on municipal liability. Tuttle, 471 U.S. at 824.

In <u>Monell</u>, the Supreme Court held that § 1983 liability of a municipal entity, such as Brentwood, may not be established by the *respondeat superior* doctrine, but instead must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights. 436 U.S. at 694. In <u>Bielevicz v. Dubinon</u>, 915 F.3d 845 (3d Cir. 1990), the Court of Appeals for the Third Circuit observed that "municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" 915 F.3d at 849-850 (quoting <u>Monell</u>, 436 U.S. at 694).

Koreny conflates the alleged failure to follow <u>police policy</u> and procedures with the <u>Monell</u> requirement that a plaintiff must show that a municipality's <u>policy</u>, custom or practice caused the deprivation of her substantive due process rights. Indeed, Koreny asserts if Wagner and Heynes had followed certain policy, her injuries would have been prevented and her constitutional rights would not have been violated. Koreny's generalized failure to train allegations, however, are inadequate to show plausibly that Brentwood had <u>a policy of inadequate training</u>.

Proving a government policy or custom can be accomplished in a number of different ways. <u>Bielevicz</u>, 915 F.2d at 850. "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986)). Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well settled and permanent as virtually to constitute law. <u>Id.</u> (citing <u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.")).

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. **A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train**. See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell."). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. "'[D]eliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, **when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program**. The city's "policy of inaction" in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities. [[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials].

 **A pattern of similar constitutional violations by untrained employees is "ordinarily necessary"** to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have **deliberately chosen a training program that will cause violations of constitutional rights**.

Connick v. Thompson, 563 U.S. 51, 60–62 (2011) (internal quotations and citations omitted)

(emphasis added).

 The Court of Appeals for the Third Circuit in Groman v. Township of Manalapan, 47

F.3d 628 (3d Cir. 1995), observed:

[I]n Oklahoma City v. Tuttle, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985), the Court held that "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the

incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." See also Colburn v. Upper Darby Township, 838 F.2d 663, 672 (3d Cir.1988), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989) (holding allegations of three similar incidents enough to sustain a claim where a single incident presumably would not be).

47 F.3d at 637.

Although "[t]o show the 'deliberate indifference' required to state a § 1983 failure to train claim, a claimant may proceed under either a 'pattern'-or 'single-incident'-based theory of liability," Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh, No. CV 15-499, 2016 WL 463787, at *4–8 (W.D. Pa. Feb. 8, 2016), it appears, but is by no means certain, under which theory Koreny intended to proceed. (ECF No. 16 at 12) (admitting a pattern is ordinarily necessary and that Brentwood defendants by moving to dismiss are seeking to prevent her from establishing a pattern.). Her complaint, however, is inadequate under either theory.

Other than pointing to the driving policies *already put in place by Brentwood* that she simply claims if followed would have prevented constitutional injury, Koreny does not provide any factual allegations in support of her failure to train theory asserted against the Borough. She cites to no examples of previous incidents, and thus, cannot make out a pattern. Indeed, the very purpose of showing a pattern is to demonstrate that the municipal defendant had knowledge. Its failure to act in light of that knowledge could indicate a deliberate indifference by the municipality to a violation of the particular constitutional right, which here requires an intent to harm. Koreny does not advocate that she pursues a single incident based failure to train claim. Again, her complaint points to nothing more than there were policies that, if followed, would have prevented the fleeing individual from running the vehicle he was driving into hers, and because the vehicle accident occurred, it must have resulted from inadequate training. These allegations are

insufficient under <u>Tuttle</u>. Her complaint, at most, states a claim sounding in negligence, which is insufficient to state a plausible claim for violation of her substantive due process rights by Brentwood.

### a) Application of *Fagan I*

Although Koreny did not make the argument in her filings, at the hearing held on December 12, 2017, Koreny's counsel relied on the panel opinion in <u>Fagan I</u> to avoid <u>Heller</u>.[3] <u>Fagan I</u> was issued contemporaneously with the en banc panel opinion in <u>Fagan v. City of Vineland</u>, 22 F.3d 1296 (3d Cir. 1994) (en banc) ("<u>Fagan II</u>") (adopting the "shocks the conscience" test for substantive due process violations), to argue that because Koreny asserts that the inadequate training by the municipal entity caused a deprivation of her constitutional rights in the context of a high speed police pursuit case, she need not also adequately plead that any individual officer violated her substantive due process rights. Despite Koreny's reliance on <u>Fagan I</u>, someone or some entity would have to violate her substantive due process rights in order for her to have a claim for violation of her substantive due process rights.

In <u>Fagan II</u> the court stated:

---

[3]The panel opinion specifically noted:

> Initially, this panel filed an opinion on August 5, 1993 and reversed the grant of summary judgment in favor of the police officers. Upon rehearing in banc the full court holds that the standard for liability under section 1983 and the Due Process Clause in a police pursuit case is whether the conduct of the defendant police officers "shocks the conscience," and will affirm the district court's grant of summary judgment in favor of the defendant police officers. The in banc opinion is filed contemporaneously with this opinion. <u>See</u> <u>Fagan v. City of Vineland</u>, 22 F.3d 1296 (3d Cir.1994) (in banc) ["<u>Fagan II</u>"]. This panel opinion essentially reinstates the original panel opinion except the issue addressed by the in banc court.

<u>Fagan I</u>, 22 F.3d at 1287.

We reject any attempt to confine the scope of <u>Collins [v. City of Harker Heights, Texas</u>, 503 U.S. 115 (1992),] to those situations where the government failed to take any action to eliminate dangerous conditions. Instead we believe that in enunciating the "shocks the conscience" standard, the Supreme Court intended no distinction between application of the "shocks the conscience" test in situations where the government officials' affirmative act is the direct cause of the constitutional harm and those where the harm is caused by governmental omission.

22 F.3d at 1304.

"The harm" addressed in these decisions is not harm sustained in the vehicular accident but the constitutional harm—the violation of her substantive due process rights.  Even if something goes awry in a police pursuit, such as an accident involving contact with the pursuing police cruiser, an accident involving contact with the vehicle driven by the fleeing individual, or even an accident involving only contact between the vehicles of third parties responding to the conduct occurring as part of the police pursuit, that conduct alone would not suffice to state a claim for municipal liability under § 1983 for violation of substantive due process rights.   Any other conclusion would be contrary to Supreme Court precedent.

In <u>Collins v. City of Harker Heights, Texas</u>, 503 U.S. 115 (1992), the Court recognized that:  1) according to <u>Monell</u> and <u>City of Canton</u>, under § 1983 a municipality "is only liable when it can be fairly said that the city itself is the wrongdoer," 503 U.S. at 120; and 2) the finding of a constitutional violation is a separate requirement for a § 1983 claim against a municipality.  <u>Id.</u> at 122.  In <u>Collins</u> the Court specifically instructed:

In particular, we held [in <u>City of Canton</u>] that the inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the failure to train amounted to "deliberate indifference" to the rights of persons with whom the police come into contact. Although the term "deliberate indifference" has been used in other contexts to define the threshold for finding a violation of the Eighth Amendment, <u>see</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), as we have explained, that term was used in the <u>Canton</u> case for the quite

different purpose of **identifying the threshold** for holding a city responsible for the constitutional torts committed by its inadequately trained agents.

Collins., 503 U.S. at 123–24 (internal citations omitted) (emphasis added).

In Fagan I the appellate court stated:

> [w]e hold that in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution. Unlike in Heller, the plaintiffs in this case brought separate, independent constitutional claims against the pursuing officers and the City. These claims are based on different theories and require proof of different actions and mental states. The pursuing officers are liable under section 1983 if their conduct "shocks the conscience." Fagan v. City of Vineland, 22 F.3d 1296 (3d Cir.1994) (in banc). The City is liable under section 1983 if its policymakers, acting with deliberate indifference, **implemented a policy of inadequate training** and thereby caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty.
> A finding of municipal liability does not depend automatically or necessarily on the liability of any police officer. Even if an officer's actions caused death or injury, he can only be liable under section 1983 and the Fourteenth Amendment if his conduct "shocks the conscience." Id. The fact that the officer's conduct may not meet that standard does not negate the injury suffered by the plaintiff as a result. **If it can be shown that the plaintiff suffered that injury, which amounts to deprivation of life or liberty, because the officer was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights**, then the City is directly liable under section 1983 for causing a violation of the plaintiff's Fourteenth Amendment rights. The pursuing police officer is merely the causal conduit for the constitutional violation committed by the City.
>
> ****
>
> We hold that a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution.

Fagan I, 22 F.3d at 1292-94.

In Fagan I the court distinguished Heller, asserting that Heller did not address the independent claims brought by the plaintiff against the City of Los Angeles and the Police Commission and that Heller also was analyzed for a violation of the Fourth Amendment, as opposed to substantive due process. Subsequently, several circuits specifically rejected Fagan I

as contrary to Supreme Court precedent.  See Evans v. Avery, 100 F.3d 1033, 1039-40 (1st Cir. 1996) (collecting decisions); see also Trigalet v. City of Tulsa, Oklahoma, 239 F.3d 1150 (10th Cir. 2001) (rejecting Fagan I); Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir.1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised.").  In Evans, for example, the court rejected the proposition that a claim against the municipality could proceed in a police pursuit case where there was no constitutional violation by the individual state actors, determining that the Fagan I panel improperly analyzed and applied Supreme Court precedent.

The decision by the Court of Appeals for the Third Circuit in Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995), explains the difficult tension between Supreme Court precedent and Fagan I.  It observed:

> [T]here is some inconsistency in our circuit as to the standard governing the underlying constitutional violation in policy, custom or practice cases. Collins, in assessing whether the plaintiff had established a constitutional violation predicate to municipal liability, asked first whether she had established a duty, and second whether the defendant's actions shocked the conscience. In Fagan v. City of Vineland, 22 F.3d 1296 (3d Cir.1994) (in banc), we interpreted Collins to mean that in all substantive due process cases, the appropriate constitutional test is whether the defendant's actions shock the conscience. But in Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir.1994) (panel opinion), in articulating the constitutional standard for municipal liability, we said:
>
>> [I]n a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution.... The pursuing police officers are liable under section 1983 if their conduct 'shocks the conscience.' *The City is liable under section 1983 if its policymakers, acting with deliberate indifference, implemented a policy of inadequate training and thereby caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty.*

> *Id.* at 1292 (emphasis added) (citation omitted). Therefore, the *Fagan* panel opinion appeared to hold that a plaintiff can establish a constitutional violation predicate to a claim of municipal liability simply by demonstrating that the policymakers, acting with deliberate indifference, enacted an inadequate policy that caused an injury. It appears that, by focusing almost exclusively on the "deliberate indifference" prong of the Collins test, the panel opinion did not apply the first prong—establishing an underlying constitutional violation.

Mark v. Borough of Hatboro, 51 F.3d 1137, 1153 n.13 (3d Cir. 1995).

Furthermore, in the en banc opinion in Fagan I, the court explicitly stated:

> We reject any attempt to confine the scope of Collins to those situations where the government failed to take any action to eliminate dangerous conditions. Instead we believe that in enunciating the "shocks the conscience" standard, the Supreme Court intended no distinction between application of the "shocks the conscience" test in situations where the government officials' affirmative act is the direct cause of the constitutional harm and those where the harm is caused by governmental omission.

Fagan II, 22 F.3d at 1304.

Despite the difficulty in reconciling Fagan I's holding with prior Supreme Court precedent, such as Heller and Collins, this court, absent intervening controlling authority, would be bound to follow Fagan I. City of Pittsburgh v. UPMC, No. CIV.A. 13-565, 2013 WL 4010990, at *4 n.1 (W.D. Pa. Aug. 6, 2013) (indicating that court is bound to consider whether subsequent Supreme Court authority calls into question appellate authority). Quite possibly, Lewis and Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997), both issued subsequent to Fagan I provide such authority.

In Lewis the petitioners were the individual officer and the municipal entities—the County of Sacramento and the Sacramento County Sheriff's Department. 423 U.S. at 837. The Court very specifically concluded that the individual officer's behavior did not shock the conscience because there was no evidence of an intent to harm. Under those circumstances, "**petitioners** are not called upon to answer for it under § 1983." Lewis, 523 U.S. at 855 (emphasis added). The

Court concluded that neither the officer nor the municipal entities—the very petitioners in <u>Lewis</u>— would be liable under § 1983. This proposition squares with prior Supreme Court precedent, <u>Heller</u>, but presents difficulty in squaring with <u>Fagan I.</u> Even if this statement is not viewed as related to the requirement in <u>Heller</u> that the individual officer must have violated the plaintiff's substantive due process rights, <u>Lewis</u>' clear pronouncement that a substantive due process claim in the context of a police pursuit requires an intent to harm the plaintiff provides a hurdle to Koreny in this matter that she cannot overcome based upon her allegations.

In <u>Brown</u>, the Supreme Court rejected the claim against a municipality under § 1983 based upon a theory that the municipality's hiring decision with respect to a sheriff's deputy who used excessive force in arrest rendered it liable for an excessive force claim because the municipality inadequately screened the employee before hiring. The Court reemphasized that "in enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the "moving force" behind the plaintiff's deprivation of federal rights." 520 U.S. at 400. The Court explained:

> Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. **Section 1983 itself "contains no state-of-mind requirement independent of that necessary to state a violation" of the underlying federal right**. *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). **In any § 1983 suit, however, the plaintiff must establish the state of mind required to prove the underlying violation**. Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

<u>Brown</u>, 520 U.S. at 404–05.

Under Fagan I claims against the municipality may go forward for violation of substantive due process in a narrow set of cases involving police pursuit where no individual officer of the municipality violated the plaintiff's substantive due process rights.  In light of subsequent Supreme Court pronouncements, there, however, still must be a violation of plaintiff's substantive due process by the municipality in order for a plaintiff to state a claim under § 1983 for violation of her substantive due process.  A complaint must contain allegations sufficient to show plausibly the necessary state of mind required for a violation of the underlying federal right.  Under Lewis, which was issued after Fagan I, there must be an intent to harm in a police pursuit case in order for the plaintiff to state such a substantive due process claim under § 1983.  If the intent to harm is not found with respect to the individual officer and his conduct, the intent to harm, then, must be found with respect to the municipality in order for Koreny to state her claim.  This requirement from Lewis in police pursuit cases combined with the theory espoused here that it was the municipality's failure to train that violated or caused the violation of her substantive due process rights dictates the result for plaintiff's present § 1983 claim.

In Borough of Hatboro the court remarked: "[n]or, for the reasons discussed above, and discussed below in our 'deliberate indifference' section, can we say that Enterprise's and the Borough's actions in failing psychologically to screen applicants shocks the conscience and therefore that the policy itself caused the harm."  51 F.3d at n. 13.  This approach reconciles Fagan I, Fagan II, and the requirement of conscious shocking conduct for there to be a violation of substantive due process, by an individual or by the governmental entity through policy, custom or practice, in order to state a claim for violation of substantive due process.  It squares as well with Lewis and Brown.

Even under <u>Fagan I</u>'s stated approach standing alone—that if Koreny fails to state a claim of deprivation of her substantive due process rights by Wagner and Heynes, she may still attempt to state a claim of violation of her substantive due process rights by the municipal entity Brentwood—her allegations under the standards of <u>Iqbal</u> and <u>Twombly</u> do not plausibly show Brentwood's municipal liability under a failure to train theory. Here, all Koreny points to is policies in place that she contends if followed would have prevented her injury. Her case presents nothing more than a negligence theory, <u>see</u> <u>Lewis</u>, 523 U.S. at 863 (Scalia, J., concurring) ("[T]here is no precedential support for a substantive-due-process right to be from reckless police conduct during a car chase."), and fails with respect to a constitutional violation as <u>Fagan I</u> still would require. Accordingly, Count III against Brentwood will be dismissed.

### B. Leave to Amend

Koreny seeks leave to amend. (ECF No. 16 at 5; ECF No. 37). Smith and Morrissey did not file any opposition to the motion for leave to amend and Brentwood defendants oppose it, contending the proposed amendment and other attempted amendment would be futile.

Rule 15 provides that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Prejudice is the touchtone for denial of leave to amend properly requested under FED. R. CIV. P. 15(a)(2) (Leave to amend should freely be given when "justice so requires."). <u>Buxton v. Hill</u>, 2:15-CV-00646, 2016 WL 4269870, at *2 (W.D. Pa. Aug. 15, 2016) ("This rule has been interpreted to mean that prejudice to the non-moving party is the touchstone for denial of an amendment.") (internal quotations omitted). Leave ordinarily should be granted absent a substantial reason to deny. <u>Fraser v. Nationwide Mut. Ins. Co.</u>, 352 F.3d 107, 116 (3d Cir. 2003); <u>Shane v. Fauver</u>, 213 F.3d 113, 115–17 (3d Cir. 2000).

"The Supreme Court has instructed that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" <u>Shane</u>, 213 F.3d at 115 (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). The Third Circuit Court of Appeals explained in <u>U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.</u>, 839 F.3d 242 (3d Cir. 2016):

> There are three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend: when "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."

<u>Victaulic Co.</u>, 839 F.3d at 249 (quoting <u>U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.</u>, 769 F.3d 837, 849 (3d Cir. 2014)).

In civil rights matters, such as this case, the Court of Appeals for the Third Circuit applies the rule that **<u>ordinarily</u>** leave to amend the complaint must be afforded a plaintiff, even without the plaintiff's motion, before dismissing a plaintiff's complaint with prejudice. <u>Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 252 (3d Cir. 2007). This case is procedurally in the early stages, and there is no undue delay or dilatory motive at issue; there is no prior amendment; and although the Brentwood defendants conclusory state there is prejudice to them on the asserted basis that they claim the actual facts do not bear out the amendment (which is not the standard), at this early stage of the case they cannot show any prejudice. Brentwood defendants, however, also oppose any amendment on the grounds that it would be futile. (ECF No. 42 at 2).

"Allowing a party to amend is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing futility, the District Court applies the same

standard of legal sufficiency as applies under Rule 12(b)(6)."  Buxton, 2016 WL 4269870, at *2

(internal quotations and citations omitted).  Koreny argues that she believes any amendment really

is unnecessary, but she offers the proposed amendment in an abundance of caution, and seeks only

to add to the complaint paragraphs 1, 3, 10, 16, 19, 63, 70, 88, 93, 170, and 171, the allegation that

"Wagner and Heynes acted '**with the intent to harm Defendant Smith or to worsen his legal**

**plight, and without a legit[i]mate legal objective.**'" (ECF No. 38 at 3).  Considering the proposed

amended complaint, attached as exhibit A to the motion and identified by Koreny (ECF No. 37-

2), Brentwood defendants point out that by the amendment she intends only to add conclusory

allegations that are insufficient to state a plausible claim for relief under § 1983, namely the

threadbare recital of the requirement announced in Lewis that:  Wagner and Haynes acted with the

intent to harm and without legitimate legal objective.  (ECF No. 42 at 4; ECF No. 38 at 2-3).

      Her purported intent is to add nothing more than conclusory recitations of the law espoused

in Lewis and Davis with respect to intent to harm by Wagner in continuing to pursue and Heynes

in permitting continued pursuit, as opposed to factual allegations to plausibly show that Wagner

or Heynes acted with that requisite intent.  These conclusory allegations are insufficient under

Iqbal and Twombly to pass Rule 12(b)(6) muster.[4]  Given that plaintiff firmly indicated:  1) her

intent in amending would be solely to add the additional and bare allegation that the alleged

---

[4] The court specifically probed plaintiff with respect to whether there were any factual allegations sufficient to support a reasonable inference of an intent to harm.  Tr. 12/12/17 at 10.  In arguing that the facts as alleged, such as that Wagner was told to stop by Heynes, the pursuit went on for 5 minutes and 40 seconds, and Wagner violated police policy, plaintiff emphasizes that this all shows that Smith had the "the intent to get this guy, and he's ignoring everything else."  (12/12/17 Tr. at 13).  But this intent—the intent to pursue Smith—is not the required intent to harm plaintiff. The intent to pursue the fleeing individual, and actions taken in that pursuit, whether unreasonable or even irresponsible, is precisely what the Supreme Court held is insufficient for a claim.

conduct of law enforcement and/or the municipality was with intent, Tr. 12/12/17 at 23; and 2) she is resting on the hope that discovery will provide her with more in support of her claim, Tr. 12/12/17 at 22; (ECF No. 16 at 6), the court concludes that amendment would be futile. Specifically, on her claim against Brentwood, she indicates she can offer no more in the way of factual allegations, states she needs discovery to do so, and contends that Brentwood defendants are attempting, apparently inappropriately, to deny her discovery—but that is precisely what occurs with a motion to dismiss and is itself not a basis for denying the motion to dismiss or permitting amendment. Accordingly, leave to amend will be denied as futile, and the motion to dismiss Counts I and II will be granted with prejudice. Swope v. Northumberland Nat. Bank, 625 F.App'x 83, 87 (3d Cir. 2015) (because any amendment would be futile the claim was correctly dismissed with prejudice); Johnson v. U.S. Dept. of Justice, 541 F.App'x 160 (3d Cir. 2013) (affirming denial of leave to amend and dismissal with prejudice).

### C. Supplemental Jurisdiction

The parties were ordered to show cause why the court should not decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over any remaining state law claims, even if the federal claims continued, including specifically the pendent-party claims against Smith and Morrisey and the state law cross-claim asserted by Smith against defendants Wagner, Heyes, and Brentwood. (ECF No. 33). Plaintiff filed her brief on supplemental jurisdiction on November 20, 2017 (ECF No. 39); the Brentwood defendants filed their brief on November 29, 2017 (ECF No. 43); and defendants Smith and Morrissey filed their brief on November 30, 2017 (ECF No. 45). In the briefs (ECF Nos. 39, 43, 45), the parties engaged in a cursory statement of supplemental jurisdiction issues. Because the court dismisses the federal claims, and there is no diversity, the court must consider whether it will exercise supplemental jurisdiction over the remaining state law

claims pursuant to 28 U.S.C. § 1367(c)(3). The court exercises its discretion to decline supplemental jurisdiction over the state law claims in Counts III, IV, and V and the cross-claim filed by Smith, (ECF No. 25), and will dismiss these claims without prejudice.

## V. Conclusion

Koreny's § 1983 substantive due process claims against the Brentwood defendants fail. Koreny did not set forth sufficient factual allegations to show plausibly that Wagner or Heynes acted with an intent to harm, Heynes acquiesced in conduct by Wagner that violated constitutional standards, or Heynes had knowledge of a prior pattern of similar unconstitutional conduct. Koreny's alleged facts do not show plausibly that the right she alleges that Wagner and Heynes violated was such that a reasonable officer would know his conduct violated a clearly established right, and they are entitled to qualified immunity. Therefore, the claims against Wagner and Heynes fail. Additionally, Koreny failed to allege facts to plausibly show any intent to harm as required by Lewis or to proceed under a failure to train theory against Brentwood. Accordingly, the motion to dismiss will be granted with respect to all federal claims. Because amendment would be futile, leave to amend will be denied and Counts I and II will be dismissed with prejudice. Finally, the court will decline supplemental jurisdiction over all the state law claims, and Counts III, IV and V and the cross-claim filed by Smith will be dismissed without prejudice and she may pursue those claims in an appropriate forum.

An appropriate order follows.

Dated: March 2, 2018                    By the court:

                                        /s/ Joy Flowers Conti
                                        Joy Flowers Conti
                                        Chief United States District Judge